## BEN W. TANNLER v.
## DEPARTMENT OF REVENUE

James O. Goodwin, Jack, Goodwin & Urbigkeit, Oregon City, represented plaintiff.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered November 18, 1976.

CARLISLE B. ROBERTS, Judge.

Plaintiff appealed to this court from defendant's Order No. VL 76-204, dated March 23, 1976, denying the plaintiff's petition to reduce the assessed value, as of January 1, 1975, of a 61.71-acre parcel of unimproved real property from $246,840 to $79,500.

The property is identified in the records of the County Assessor of Clackamas County as Map 2 1E 35C, Tax Lot 200, and Map 2 1E 35D, Tax Lots 600, 700 and 800. This land was once a portion of a dairy

farm, but the greater part of the former parcel was taken by condemnation in 1968 in connection with the construction of Highway I-205.

Viewed from the highway, looking north, the property is seen as a gently rounded butte with an elevation running from 200 to 560 feet. At the top, there is a relatively level area but the sides are steep slopes of 15 to 50 degrees. The soil is very thin and supported pasturage only briefly each year. However, the site contains a substantial number of well-spaced oak trees and superficially appears attractive for a multiple-residence development.

Following the condemnation, the plaintiff sought advice as to the use and disposition of the subject property but found nothing to encourage him. The property then and now lacked all the necessary utilities. Beginning in July 1972, he sought annexation to the City of West Linn, in order to be eligible for sewer and water facilities, and obtained approval of the city council in February 1973, but was denied by the Portland Metropolitan Area Local Government Boundary Commission (without whose approval no sewer or water hookups can be made). After protracted effort, a request for rehearing was finally rejected on October 12, 1973. Even if approval had been obtained, the city's water facilities could have served only the lower slopes (which, due to the terrain, would have required very expensive foundations for any building undertaken), and the city had made clear that the plaintiff would have to make heavy expenditures to provide a water tank and pumping station in addition to the lines usually laid by developers before approval could be given to any residential development. The evidence at trial leads to the conclusion that the property, even if annexed and zoned, would be costly to develop because the water service

alone would require installation of reservoir and pump station at a cost of $155,000; there would be an "annexation fee" of $115,000 to $173,500; and the terrain and subsurface rock strata would cause excess cost for utility and street construction.

A reason for disapproval of annexation by the Portland Metropolitan Area Local Government Boundary Commission was that the property was designated as open space in the "Comprehensive Plan for Clackamas County, Oregon," promulgated by the Clackamas County Board of Commissioners as of August 7, 1974, in its Order No. 74-1073. In March 1975, after the assessment date applicable to this case, a new petition for annexation was filed with the boundary commission, initiated by the City of West Linn. In June 1975, an adverse staff report was issued by the boundary commission and in July 1975, a second and additional report was issued by the staff, again recommending denial of annexation. However, on August 20, 1975, the boundary commission finally issued an order approving annexation which is now in effect. These facts relating to the state of the property as of January 1, 1975, must be taken into account in considering what knowledgeable sellers and knowledgeable buyers would recognize as affecting the value of the subject property for developmental purposes. Annexation and zoning were not finally approved by the city council in West Linn until May 12, 1976, a year and four months after the assessment date.

At this trial, in support of his contention that the true cash value of the subject property, as of January 1, 1975, should be limited to $79,500, the plaintiff offerred the testimony of Mr. John C. Carlson, a trained appraiser of real estate with thirty years of continuous experience, a man particularly knowledgeable with respect to the subject property and to property

in the surrounding area. His testimony was convincing that the county's appraisal of the subject property at $4,000 an acre was not supportable. Mr. Carlson testified that on January 1, 1975, it was public knowledge that the subject property could not be annexed, could not be developed, and could not be built on, and therefore no one was interested in buying it. He listed some of the practical problems of development. Approximately 22 acres of the 61.71 acres were prohibited from development because of zoning and the steep terrain, leaving 41 acres. The development of the 41 acres would involve immediate payouts of $111,600 for the city's annexation fee, $134,800 for the water system, and $9,000 for the extension of the main, a total of $255,400 or $6,229 of excess cost of development per acre for each of the 41 acres plus extra costs for street and utility installations in steep, rocky terrain. The subject property, after such expenditures, would have to compete with several hundred acres of "buildable land" then within the city limits, with utilities and paved streets which, as of January 1, 1975, were available at $4,000 to $6,000 per acre. Mr. Carlson demonstrated that typical sales of "unbuildable land," outside the city, were being purchased for speculation at $1,309 to $2,300 per acre. His opinion was that the maximum value per acre of the subject land as of January 1, 1975, was $1,500 per acre, a total of $92,000 for the whole parcel. His opinion was supported on various points by 35 sales which appeared pertinent (but the court notes that not all of these had been fully verified).

Defendant's witness, Mr. Larry May, was first employed as an appraiser at the Clackamas County Assessor's office in October 1970, and had two years of experience prior to that time as a licensed real estate salesman and as a real estate appraiser for a savings and loan company. He has had three years of

residential appraisal and three years of land appraisal and has risen to be a senior appraiser for the county in the office of the county assessor. His appraisal of $246,840 ($4,000 per acre) was based on his determination that the property was "residential" and that the highest and best use was as residential property. He found that the subject property was located in a semi-rural area that is fast changing to suburban use and that, since the I-205 freeway has been built, new houses and developments have been springing up rapidly.

In the view of the court, he failed to give proper consideration to the costs that would be contemplated by a knowledgeable buyer as of January 1, 1975. He overvalued the facts that a sewer adjoined Highway I-205 and that water could be brought to the lower slopes of the property (which the evidence showed should not be built on). He particularly emphasized the city's own acts in pushing for annexation of the property but failed to weigh sufficiently the negative attitude maintained by the staff of the boundary commission, without whose approval the improvement of the property was legally impossible. Adverse reports were still being issued by the boundary staff as late as July 1975, detailing the problem of development and building on the property and extolling the policy of continuing it as undeveloped open space.

Mr. May's "comparables" involved more favorably placed tracts whose sales prices were dependent on immediate annexation and zoning for building purposes (and which, in fact, had been annexed without opposition), or were distinguishable from the subject property for other reasons which were developed on cross-examination.

The court's decision, of course, turns on the

preponderance of the evidence offered. Plaintiff's contentions were well supported by the evidence; defendant's testimony was premised upon assumptions which accepted, as answered, the very problems which were crucial to value and which had to be addressed.

What the future of the property may be after January 1, 1975, remains unclear and is relevant only as knowledgeable by seller and buyer on that date. As of that date, the preponderance of the evidence indicates that the true cash value of the subject could not have exceeded $1,500 per acre. The court finds the true cash value to have been $1,500 per acre, a total value of $92,565 for the 61.71-acre parcel.

Defendant's Order No. VL 76-204 shall be set aside and held for naught. The County Assessor and Tax Collector of Clackamas County, Oregon, shall amend the assessment and tax rolls of the county for the 1975-1976 tax year as required by this decision and determine and insert the correct tax in the tax roll. If plaintiff has overpaid the correct tax, the county commissioners shall refund such excess payments, with interest thereon, as provided by ORS 311.806 and 311.812.

Plaintiff is awarded his statutory costs.