BEN W. TANNLER and
DAISY V. TANNLER
*v.*
DEPARTMENT OF REVENUE

James O. Goodwin, James O. Goodwin and Associates, West Linn, represented plaintiffs.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered March 31, 1978.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appealed from the defendant's Order No. VL 77-296, dated May 16, 1977, respecting the January 1, 1976, assessment for property tax purposes of the plaintiffs' property, identified in the records of

the County Assessor of Clackamas County as Map 2 1E 35C, Tax Lot 200, and Map 2 1E 35D, Tax Lots 600, 700 and 800. (The same property was the subject of a similar appeal as of the assessment date of January 1, 1975, reported as *Tannler v. Dept. of Rev.*, 6 OTR 542 (1976). Reference should be made to that decision for background information which is not repeated herein.)

The Department of Revenue affirmed the assessed values set by the county assessor and the board of equalization as of January 1, 1976, in the sum of $246,840 for the raw land only. The property is in its natural state, without improvements. Plaintiffs contend that the true cash value did not exceed $94,600. The situation depicted in *Tannler, supra,* 6 OTR 542 et seq., as of January 1, 1975, was changed in three respects only: in August 1975, the subject property was annexed into the City of West Linn; in May 1976, the zoning was changed from R-20 to R-10 (residential); inflation has increased land values generally and also all costs of real property development. The defendant's order, from which this appeal is taken, stated:

"* * * It is doubtful if these [first two] changes had their full effect on the property's value on January 1, 1976. * * *"

The testimony presented in court sustained the defendant's conclusion on this point.

█ Plaintiffs' expert witness, John C. Carlson, a man demonstrably knowledgeable in all aspects of West Linn property, stressed the potential excess development costs of the subject property, emphasizing that the land will be very difficult to develop, in part because of steep, rocky terrain, in part because of the danger of slides in some areas. Additionally, the development of a water system for the subject property will probably be the chief expense, but it is only one among several. For example, the West Linn city engineers designed a water system which would impose assessments estimated at $1,417 per acre, the

plaintiffs' share being $83,402. The witness gave as his opinion that cost of utilities to serve subject property on the assessment date would have been not less than $7,000 an acre. In the meantime, this land must compete with numerous other parcels of land in the city which are served by utilities, have better terrain, will suffer no annexation problems, and are available at $4,000 to $8,000 per acre. In due time, the economy may justify such expenses.

■ The defendant's expert witness, Mr. Larry May, presented five scattered sales of allegedly comparable properties, four of which, at the time of sale, like the subject property, lacked either water or sewer installations, or both, and which were wholly unimproved. The court has difficulty in accepting these offerings as "comparable." At the time the first comparable was developed, the City of West Linn helped finance the water and sewer systems but its policy now is to impose these costs on the developers. In two of the sales, the terrain was quite similar to subject property in appearance but no evidence was produced to show that the technological problems exist which are patent handicaps for the subject property. The three other "comparables" apparently are possible to develop with much less expense. No effort was made to convince the court that the buyers and sellers of these five widely scattered parcels were "knowledgeable" parties. It appeared to the court that an insufficient degree of comparability to the subject property was demonstrated, although further inquiry of the witness might have strengthened his testimony.

The court also finds questionable conclusions were reached by the witness for the defendant in several matters. For example, he described the subject property as having "good road access, with about 2,800 feet of frontage." But the opposing witness, Mr. Carlson, testified, without contradiction, that only at the extreme east corner and for about 500 feet on the westerly side of the subject property is it feasible to construct access, because of the nature of the terrain.

Again, defendant's witness testified that "a nearby water tank can serve about 25 percent of this land." However, the testimony shows that at least one-third of the acreage of subject property is steep, unbuildable land which the county's planning agency classifies as "open space, scenic preservation" and the city's planning agency classifies as "greenway" which, it is expected, will be denied building site classification if and when the area is platted. The present available water to which defendant's witness refers can serve only up to a 250-foot elevation. From the lower boundary of the property to the 250-foot level, the subject property has only a few possible building sites (In Tax Lot 200) and all the rest of this lower level area is found within the unbuildable acreage.

■ Defendant's witness stressed the fact that Mr. Tannler had signed a listing agreement of the subject property with a broker on May 3, 1975, at a price of $230,000. However, the evidence is clear that nothing came of this listing, in spite of the market activity to which defendant's witness testified, and it is not evidential of market value. (Mr. Tannler was present in court but was never asked his opinion of value.)

Based on the available testimony, the court finds that 25 to 30 percent of the subject property is unbuildable and, as to the rest, development will certainly be postponed for a considerable number of years until more easily developed properties have been exhausted. Four subdivisions in the Willamette area and to the north are still being developed and the City of West Linn is working to obtain adequate sewage capacity (and charging high fees for hookups).

The court has labored to make a decision, relying on incomplete testimony in a complex set of facts; however, it finds that the preponderance favors the position of the plaintiffs and that the conclusion of their expert witness that the true cash value on January 1, 1976, was $120,000 is more likely to be true than the conclusion of the defendant's witness of $277,000.

The County Assessor and Tax Collector of Clackamas County shall amend the assessment and tax rolls for the tax year 1976-1977 in accordance with this decision, and the County Commissioners of Clackamas County shall refund to the plaintiffs any excess taxes paid which may be found after correction of the rolls, together with interest thereon, as provided by statute.

The parties will bear their own statutory costs.